IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CAPTAIN D'S, LLC, | ) |
| Plaintiff, | ) NO. 3:09-00809 |
| | ) JUDGE HAYNES |
| v. | ) |
| ARIF ENTERPRISES, INC. and | ) |
| ARIF M. DEEN, | ) |
| Defendants. | ) |

## MEMORANDUM

Plaintiff, Captain D's, LLC, filed this action under 28 U.S.C. § 1332, the federal diversity statute, against the Defendants, Arif Enterprises, Inc. and Arif M. Deen. Plaintiff's claims are that Defendants breached the terms of the Restaurant License Agreements (the "License Agreements") between the parties. Specifically, Plaintiff alleges that Defendants failed to operate five Captain D's franchise restaurants in the Houston, Texas area (the "Arif Franchises") according to the standards and uniformity of operation provisions in the License Agreements.

Before the Court is Plaintiff's motion for partial summary judgment (Docket Entry No. 52), contending, in sum, that the undisputed facts establish Defendants' breach of the License Agreements, entitling Plaintiff to liquidated damages. In response, Defendants contend: (1) that they were attempting to comply with the terms of the License Agreements when Plaintiff terminated the agreements; (2) Defendants did not sustain any damages from Defendants' acts and omissions; (3) Plaintiff caused its alleged damages; and (4) the liquidated damages provision constitutes an unenforceable penalty. Plaintiff did not file a reply to Defendants' response.

For the reasons set forth below, the Court concludes that the undisputed material facts clearly establish Defendants' breach of their License Agreements with Plaintiff, and the

1

liquidated damages provisions providing for future royalties payments are reasonable. Accordingly, Plaintiff's motion for partial summary judgment should be granted.

## I. FINDINGS OF FACT[1]

Plaintiff, Captain D's, operates a brand of quick service seafood restaurants with more than 550 company-owned and franchised restaurants. (Docket Entry No. 54, Plaintiff's Statement of Undisputed Material Facts at ¶ 1). Defendant Arif Enterprises, Inc. ("Arif Enterprises") was a Captain D's franchisee operating five Captain D's restaurants in and around Houston, Texas. Id. at ¶ 2. For these franchises, Defendants entered into restaurant license agreements with or consented to the assignment of license agreements to Arif Enterprises for the operation of the following Captain D's restaurants: 10232 South Post Oak Road, Houston, Texas 77096 (the "Post Oak Restaurant"); 12161 Southwest Freeway, Stafford, Texas 77477 (the "Stafford Restaurant"); 10703 Jones Road, Houston, Texas 77065 (the "Jones Road Restaurant"); 27704 FM 149, Tomball, Texas 77375 (the "Tomball Restaurant"); and, 595 West Little York Road, Houston, Texas 77091 (the "West Little York Restaurant"). Id. at ¶ 3. The License Agreements remained in effect until Captain D's terminated them in July 2009 due to Arif Enterprises' breaches of those License Agreements. Id. at ¶ 4.

Each of Captain D's License Agreements set forth provisions for standards and uniformity of operation:

> <u>Standards and Uniformity of Operation</u>. Licensee recognizes the mutual benefit to Licensee, Licensor and other licensees of Licensor of the uniformity of

---

[1] Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As will be discussed infra, under Supreme Court holdings, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for a directed verdict. Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986). Under the applicable law, the Court concludes that there are not any material factual disputes. Thus, this section constitutes findings of fact under Fed. R. Civ. P. 56(d).

appearance, service, products and advertising of the Captain D's System and
understands that such uniformities are necessary for the successful operation of
the Captain D's restaurants. Licensee also acknowledges that products sold under
the Captain D's name and restaurants using the Captain D's System have a
reputation for excellence. This reputation has been developed and maintained by
Licensor, and Licensee acknowledges that it is of the utmost importance to
Licensor and to all other licensees that such reputation be maintained. To this end,
Licensee covenants and warrants with respect to the operation of the Captain D's
restaurant at the Franchised Site that Licensee and its employees will comply with
all of the requirements of the Captain D's System and will throughout the term of
this Agreement:

(a) Operate the restaurant and prepare and sell all products sold therein in
accordance with the specifications, standards, business practices and policies of
Licensor now in effect or hereinafter promulgated by Licensor for its licensees,
and comply with all requirements of the Captain D's System as they are now or
hereafter established. . . .

(b) Maintain and operate the restaurant in good condition and repair and in a
proper and businesslike manner, and use Licensee's best efforts to maintain a
clean, quiet and respectable atmosphere therein and do such redecoration,
repairing and restoration as from time to time may be required to meet Licensor's
standards. . . .

Id. at ¶ 5.

The License Agreements authorized Captain D's to terminate these agreements for, among other things, "[f]ail[ure] to perform any of the terms and conditions contained in this Agreement. . . ." Id. at ¶ 6. Upon termination, each of the License Agreements states:

Upon termination of this Agreement . . . , all rights of Licensee hereunder shall
cease, and Licensee shall pay to Licensor all sums then due plus damages for the
right to receive the royalty fees for each year or portion thereof remaining in the
original term of this Agreement, together with any other damages suffered by
Licensor as a result of such default, and Licensee shall have no further claim
hereunder. . . . Licensee shall pay to Licensor in addition to any amounts found to
be due and owing, all expenses incurred by Licensor as a result of any such
default, including reasonably attorneys' fees. . . .

Id. at ¶ 7. Deen personally guaranteed the performance of Arif Enterprises under each of the License Agreements. Id. at ¶ 8.

On April 3, 2008, William E. Nelson, Captain D's vice president of franchise operations, wrote a letter to Arif Enterprises citing specific deficiencies in its restaurants' operations citing:

- The windows looked like no one had cleaned them in months.

- Paint was flaking off the gutters in huge chunks at many of your locations.

- The drive-thru menu boards had paint flaking off them.

- The indoor window sills looked like no one had cleaned them in months . . . .

- In addition, the building at Stafford had the following major issues:

    o The building needs painting. . . .

                    * * *

    o As described in Chris Kane's e-mail of December 13, 2007, the main sign lighting has not worked for months.

Id. at ¶ 9. Deen does not dispute that these deficiencies existed as of April 3, 2008. Id. at ¶ 10. Nelson's July 3rd letter also served as Arif Enterprises' written notice of default of the License Agreements based on its failure to correct any of the deficiencies listed in the April 3, 2008 letter. Id. at ¶ 13. Deen admits receiving the notice of default. Id. at ¶ 14.

Nelson initially demanded that the deficiencies be remedied on or before May 31, 2008. Id. at ¶ 11, but extended this deadline until August 15, 2008. Id. at ¶ 12. In a September 8, 2008 letter, Nelson informed Arif Enterprises that:

> Pursuant to my letters dated April 3, 2008 and July 3, 2008, and your failure to complete the required work outlined in those letters . . . Captain D's . . . is hereby notifying you that, unless you present an acceptable plan to complete the work on or before September 17, 2008, the License Agreements for the above-referenced locations will terminate on that date without further notice.

Id. at ¶ 15.

Deen admits that the work outlined in previous letters had not been completed as of Nelson's September 8, 2008 letter. Id. at ¶¶ 16-17. Additionally, Deen did not present a plan to

complete the work to Nelson by September 17, 2008. Id. at ¶ 18. By letter dated September 17, 2008, Nelson extended the September 17, 2008 deadline in light of a recent hurricane in the Houston area, stating "You do not need to submit a plan; however, you must complete the remodel of the above-referenced restaurants by December 31, 2008 . . . ." Id. at ¶¶ 19-20. Deen admits receiving this letter. Id. at ¶ 21.

On November 17, 2008, Nelson notified Arif Enterprises of its failing score on Captain D's operational standards audit that was conducted at the Tomball Restaurant. Id. at ¶ 22. On June 2, 2009, Nelson provided Arif Enterprises with its last and final notice of default and termination. Id. at ¶ 23. Nelson's June 2nd letter cited the recent inspection of Defendants' Post Oak and Stafford Restaurants by Nelson, Captain D's President, David Head, and Captain D's Director of Franchise Operations, Chris Kane. Id. at ¶ 24. Nelson's June 2nd letter also notified Arif Enterprises of the failing scores of its West Little York, Jones Road, and Post Oak Restaurants. Id. at ¶ 27. Nelson's June 2nd letter required, inter alia, that Arif Enterprises "[c]omply with the Captain D's Operational Standards as outlined in the attached Standard Operating Procedures, and pass a re-inspection at all of your restaurants[.]" Id. at ¶ 28. That letter stated, "Clearly neither restaurant meets the minimum operational standards that a franchisee must maintain to operate a Captain D's." Id. at ¶ 25. Deen does not dispute the condition of the Post Oak and Stafford Restaurants during the May 21, 2009 visit. Id. at ¶ 26.

As of July 7, 2009, all of the deficiencies noted during the Captain D's operational standards audit had not been cured. Id. at ¶ 29. On July 28, 2009, Nelson sent Arif Enterprises a Termination Notice, stating, "[P]ursuant to paragraph 19(b)(1) of the License Agreements, the License Agreements, together with all of your rights thereunder, are hereby terminated, effective immediately. Id. at ¶ 30.

The License Agreements provide a method to calculate of damages for royalties in the event of termination, and Nelson sent Arif Enterprises a calculation of its damages for royalties owed by Arif Enterprises to Captain D's as a result of its breach. Id. at ¶ 31. Pursuant to this calculation, Captain D's asserts damages in the amount of $719,031.54. Id. at ¶ 32. Deen testified that sales from 2006 to 2008 were accurately reflected in that royalties calculation. Id. at ¶ 33-34.

## II. CONCLUSIONS OF LAW

"The very reason of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the opposing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Accord Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.
>
> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

Id. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a "material fact" for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.
> 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991) (quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the

7

nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874 F.2d at 353 (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (citations omitted). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting Liberty Lobby).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is 'genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party</u>.
>
> \*   \*   \*
>
> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict-'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'</u>

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that:

> In ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated.
>
> It has been stated that: "The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . ."

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986) (citation omitted).

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily appropriate for summary judgment.

3. The movant must meet the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'

6. As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the 'old era' in evaluating the respondent's evidence. The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'

Street, 886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

### A. Breach of Contract

The essential elements of a breach of contract claim are: (1) the existence of a contract; (2) nonperformance amounting to a breach of contract; and (3) damages caused by the breach of

contract. Lifecare Ctrs. Of Am., Inc. v. Charles Town Assocs. Ltd. P'ship, 79 F.3d 496, 514 (6th Cir. 1996) (applying Tennessee Law). Under Tennessee law, "[a] contract can be express, implied, written or oral, 'but an enforceable contract must result from a meeting of the minds in mutual assent to the terms, must be based upon sufficient consideration, must be free from fraud or undue influence, not against public policy and must be sufficiently definite to be enforced.'" Williams v. Coffey, No. E2007-01476-COA-R3-CV, 2008 WL 1788060, at *3 (Tenn. Ct. App. Apr. 21, 2008) (quoting Ferguson v. Nationwide Property & Cas. Ins. Co., 218 S.W.3d 42, 49 (Tenn. Ct. App. 2006)).

It is undisputed here that Captain D's and Arif Enterprises had five enforceable contracts (i.e., the License Agreements) for the operation of the Arif's franchises. Captain D's relies on the following provision of each License Agreement for its breach of contract claim:

> Standards and Uniformity of Operation. Licensee recognizes the mutual benefit to Licensee, Licensor and other licensees of Licensor of the uniformity of appearance, service, products and advertising of the Captain D's System and understands that such uniformities are necessary for the successful operation of the Captain D's restaurants. Licensee also acknowledges that products sold under the Captain D's name and restaurants using the Captain D's System have a reputation for excellence. This reputation has been developed and maintained by Licensor, and Licensee acknowledges that it is of the utmost importance to Licensor and to all other licensees that such reputation be maintained. To this end, Licensee covenants and warrants with respect to the operation of the Captain D's restaurant at the Franchised Site that Licensee and its employees will comply with all of the requirements of the Captain D's System and will throughout the term of this Agreement:
>
> (a) Operate the restaurant and prepare and sell all products sold therein in accordance with the specifications, standards, business practices and policies of Licensor now in effect or hereinafter promulgated by Licensor for its licensees, and comply with all requirements of the Captain D's System as they are now or hereafter established. . . .
>
> (b) Maintain and operate the restaurant in good condition and repair and in a proper and businesslike manner, and use Licensee's best efforts to maintain a clean, quiet and respectable atmosphere therein and do such redecoration,

repairing and restoration as from time to time may be required to meet Licensor's standards. . . .

(Docket Entry No. 43-2).

As detailed in the Court's findings of fact, supra, Defendants' operations of their franchises were deficient and breached Captain D's standards and uniformity of operation provisions. Defendants effectively concede the numerous deficiencies and breaches cited by Plaintiff, but cite their efforts to correct those deficiencies when Plaintiff sent the Termination Notice in July of 2009. Yet, one year and three months passed between Captain D's first notice to Defendants of the franchises' deficiencies and the ultimate termination of the License Agreements. Captain D's repeated extensions to correct the cited deficiencies and Defendants' concessions about the many remaining deficiencies in the Arif Franchises lead the Court to conclude that Defendants breached their License Agreements with Captain D's.

## B. Damages

As to the issue of damages, Plaintiff cites the following provision of the License Agreements:

> Upon termination of this Agreement . . . , all rights of Licensee hereunder shall cease, and Licensee shall pay to Licensor all sums then due plus damages for the right to receive the royalty fees for each year or portion thereof remaining in the original term of this Agreement, together with any other damages suffered by Licensor as a result of such default, and Licensee shall have no further claim hereunder. . . . Licensee shall pay to Licensor in addition to any amounts found to be due and owing, all expenses incurred by Licensor as a result of any such default, including reasonably attorneys' fees. . . .

(Docket Entry No. 54, Plaintiff's Statement of Undisputed Material Facts at ¶ 7).

In response, Defendants contend that Plaintiff did not suffer any damages or caused its damages through its Termination Notice. Defendants argue that the liquidated damages provision constitutes an unenforceable penalty against the Defendants. Defendants, however,

fail to cite any evidence to support their contention that Plaintiff did not suffer damages or Plaintiff caused those damages. The undisputed facts establish that Defendants breached the terms of the License Agreements over an extended period of time, and such breach clearly damaged Plaintiff, giving rise to an injury.

As to the amount of damages, Plaintiff submits an "Accounts Receivable" spreadsheet to reflect the amounts owed as royalties and other expenses under the terms of the parties' License Agreements' termination clauses. Plaintiff also cites Deen's failure to dispute the amount of those damages in his deposition. Deen's deposition acknowledged that the sales figures quoted in the spreadsheet seemed reasonably correct. (Docket Entry No. 43-1, Deen Deposition at pp. 88-89). Plaintiff asserts that these facts justify a damages award of $719,031.54.

On a liquidated damages claim in a similar franchise agreement, the Honorable Aleta Trauger of this Court observed:

> Under Tennessee law, the term "liquidated damages" "refers to an amount determined by the parties to be just compensation for damages," should a contract breach occur. Vanderbilt Univ. v. DiNardo, 174 F.3d 751, 755 (6th Cir. 1999). The fundamental purpose of a liquidated damages provision is to provide a means of compensation in the event of a breach where damages would be indeterminable or otherwise difficult to prove. Guiliano v. Cleo, Inc., 995 S.W.2d 88, 98 (Tenn. 1999).
>
> Tennessee courts "have long recognized the freedom of parties to agree upon terms that may not appear desirable to outsiders and the duty of the courts to refrain from interfering with the parties' agreement unless to enforce it would violate established public policy." Anesthesia Med. Group v. Chandler, 2007 WL 412323, *9 (Tenn. Ct. App. Feb.6, 2007). The courts will uphold a liquidated damages provision, if "the liquidated damages specified were a reasonable prediction of what a breach would cost the injured party in light of circumstances at the time the contract was formed." United States v. Ponnapula, 246 F.3d 576, 584 (6th Cir. 2001). Therefore, "the amount of actual damages at the time of breach is of little or no relevance to whether the clause is an impermissible penalty." Id. Courts will not, however, enforce a liquidated damages provision "if the stipulated amount constitutes a penalty." DiNardo, 174 F.3d at 755. A penalty is "designed to coerce performance by punishing default." Id. Any doubt

as to the character of a contract provision "will be resolved in favor of finding it a penalty." Id.

Guesthouse Int'l Franchise Sys., Inc. v. British Am. Props. MacArthur Inn, LLC, 2009 WL 278214, at *9-*10 (M.D. Tenn. 2009). Yet, a liquidated damages provision constitutes a penalty if "it d[oes] not provide 'a reasonable prediction of what a breach would cost the injured party in light of the circumstances at the time the contract was formed.'" Id. at *10 (quoting Ponnapula, 246 F.3d at 584).

"Courts have generally permitted a franchisor to recover future royalties when the franchisee terminates, repudiates, or abandons the franchise. But courts have been hesitant to award future royalties under a multi-year franchise agreement when there is possible double-recovery, uncertainty in the existence and amount of future royalties, and inability to determine what portion of lost royalties was actually lost profits and not costs attendant to maintaining the franchise relationship." Moran Industries, Inc. v. Mr. Transmission of Chattanooga, Inc., 2010 WL 2851020, at *10 (E.D. Tenn. July 15, 2010) (quoting Kiddie Academy Domestic Franchising LLC v. Faith Enterprises DC, LLC, 2010 WL 673112, at *5 (D. Md. Feb. 22, 2010)). The failure of a franchisor to provide sufficient evidence for the Court to make "a fair and reasonable estimate of the amount of future royalties" justifies the denial of summary judgment as to damages. Kiddie Academy, 2010 WL 673112, at *6.

In determining whether a liquidated damages provision is a penalty, Tennessee courts have relied upon rulings from other courts where a plaintiff sought to collect liquidated damages on similar contracts. See Testerman v. Home Beneficial Life Ins. Co., 524 S.W.2d 664, 668-69 (Tenn. Ct. App. 1974). When analyzing whether liquidated damages provisions in franchise contracts function as penalties, courts often scrutinize the length of time the liquidated damages provision compensates the franchisor. In Howard Johnson International, Inc. v. HBS Family,

14

Inc., a liquidated damages provision was deemed a penalty where the requested damages did not bear "any reasonable relationship to the pecuniary harm plaintiff would have likely suffered in the event of a breach." 1998 WL 411334, at *8 (S.D.N.Y July 22, 1998) (Sotomayor, Dist. Judge).

Courts have also examined the length of time required by the franchisor to replace the franchise in assessing whether liquidated damages provisions are reasonable. Numerous courts have found that in the hotel context, two years is a reasonable time estimate for damages as that is the average time it takes a franchisor to find a replacement franchise. Radisson Hotels Int'l, Inc. v. Majestic Towers, Inc. 488 F. Supp. 2d 953, 959-60 (C.D. Cal. 2007); Howard Johnson Int'l, Inc. v. Inn Development, Inc., 2009 WL 2920819, at *7-*8 (D.S.D. Sept. 11, 2009) (collecting cases). In Inn Development, a franchisee breached the terms of a 15 year licensing agreement after approximately 1.5 years operating a hotel. In rejecting the contract's specified damages clause that is similar to the royalties damage provision here, the court noted that allowing for recovery over 13 years would result in an unwarranted windfall to Howard Johnson. Id. at *8. In ruling the provision a penalty, the Court noted that the damages requested was not a normalized dollar amount, that it was unreasonable to expect a franchisor to not mitigate its damages over the entire 15 year period, that such an award would go against public policy of discouraging economic waste, and that the damages were both speculative and unreasonable. Id. at *8-*9.

Other courts have enforced liquidated damages provisions for future royalties. In Century 21 Real Estate LLC v. Bercosa Corp., the court there enforced a liquidated damages provision in a franchise agreement that calculated royalty payments for the 98 months remaining under the agreement. 666 F. Supp. 2d 274 (E.D.N.Y. 2009). Numerous other courts have

enforced liquidated damages provisions awarding future royalties for three year terms. See La Quinta Corp. v. Heartland Properties LLC, 603 F.3d 327 (6th Cir. 2010); Holiday Inns, Inc. v. Seikel and Associates, Inc., 1986 WL 5935 (Tenn. Ct. App. May 20, 1986); Country Inns & Suites By Carlson, Inc. v. Interstate Properties, LLC, 2008 WL 2782683 (M.D. Fla. July 16, 2008). Finally, a liquidated damage provision of five years of royalty payments was found reasonable using a similar test under California law where the franchisee breached an agreement not set to expire for 18 years. Travelodge Hotels, Inc. v. Kim Shin Hospitality, Inc., 27 F. Supp. 2d 1377, 1382-83 (M.D. Fla. 1998).

The License Agreements here appear extraordinarily similar to those at issue in Shoney's, Inc. v. Morris, 100 F. Supp. 2d 769 (M.D. Tenn. 1999). In that action, the franchisee breached six separate franchise agreements by closing his restaurants, and the franchisor filed suit to recover liquidated damages for lost future royalties. Id. at 771. The franchise agreements in Morris were all for terms of twenty years, and the parties signed the six agreements between 1984 and 1993. Id. The franchisee breached the agreements in 1997. The Honorable Thomas A. Higgins found that the liquidated damages clauses for future royalties were not unenforceable as against public policy. Id. at 776-77. Ultimately, Judge Higgins held that the liquidated damages provisions for future royalties were enforceable. Id. at 777.

The five License Agreements here are all for 20-year terms, with expirations in 2012, 2013, 2024, 2025, and 2026, respectively (Docket Entry Nos. 43-2 & 43-6). Upon review of the precedents cited above, the Court finds that the liquidated damage provisions of the License Agreements are reasonable. While Defendants have asserted that the liquidated damages provisions function as penalties, they have not offered any support for that contention. "The Court finds no justification for the [Defendants'] bald statement that the clauses are void and

unenforceable because they fail to meet the reasonable expectations of the parties." Morris, 100 F. Supp. 2d at 777.

For the above stated reasons, Plaintiff's motion for summary judgment should be granted on Plaintiff's breach of contract claim, and Plaintiff is awarded its liquidated damages of $719,031.54.

An appropriate Order is filed herewith.

**ENTERED** this the 6th day of December, 2010.

WILLIAM J. HAYNES, JR.
United States District Judge